# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISON

| | |
|---|---|
| ULYSSES L. FEAGIN, II, | ) CASE NO. 1:24-cv-02099-PAB |
| | ) |
| Plaintiff, | ) PAMELA A. BARKER |
| | ) UNITED STATES DISTRICT JUDGE |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) REUBEN J. SHEPERD |
| WARDEN SHELBIE SMITH, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

## I.     Introduction

On November 18, 2024, Petitioner Ulysses L. Feagin, II ("Feagin") filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1). Respondent filed her Return of Writ, the state court record, and transcripts on April 11, 2025. (ECF Docs. 11, 11-1, 11-2). On December 30, 2025, Feagin filed a Motion to Expand the Record. (ECF Doc. 24). On the same day, Feagin filed his Traverse. (ECF Doc. 25). Respondent filled an opposition to Feagin's motion (ECF Doc. 26) and Feagin filed a brief in support of his motion (ECF Doc. 27). Both the Motion and the Petition are ripe for review.

## II.     Motion to Expand the Record

At the outset, I take this opportunity to address Feagin's Motion to Expand the Record. (ECF Doc. 24). Feagin moves the Court, for the second time, to add material to the record pursuant to Habeas Rule 7 for consideration of his Petition. Feagin argues that the proposed

1

additions "are relevant to this court's adjudication of Claims on the merits and any perceived procedural default, or tolling defenses raised by the state respondent." (*Id.* at p. 1). Feagin also states that the exhibits "support constitutional violations of Brady, Giglio, Napue, and Ineffectiveness of counsel Due process Right to fair Trial, search and seizure." (*Id.*).

Respondent opposes the motion arguing "the documents are not necessary or relevant to resolve the issues presently before this Court." (ECF Doc. 26, p. 4).

As an initial matter, Feagin seeks expansion for records in support of a "Brady claim." (ECF Doc. 24, p. 2). However, Feagin did not raise a Brady claim in his Petition and it is not proper to raise new grounds here. The Court can only review alleged constitutional violations raised in the Petition, not in auxiliary motions or the Traverse. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Jenkins v. Welch*, No. 4:09CV637, 2010 WL 1948297, at *15 (N.D. Ohio Apr. 26, 2010). Therefore, to the extent Feagin is attempting to raise new grounds, I find this improper.

I now turn to the grounds properly raised in his Petition. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") places evidentiary restrictions on habeas proceedings. *Shoop v. Twyford*, 596 U.S. 811, 821 (2022) ("AEDPA provides the governing rules for federal habeas proceedings, and our precedents explain that a district court must consider that statute's requirements before facilitating the development of new evidence."). Because AEDPA confers a presumption of correctness on determinations of factual issues made by a state court, a district court ordinarily may not consider evidence outside of the state court record on a Section 2254 petition when the state courts have considered a claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011); *see also* 28 U.S.C. § 2254(e)(1). The state court record, itself, is sufficient for purposes of federal habeas review.

Expansion beyond the state court record is the exception, not the rule. Thus, "a federal court may order an evidentiary hearing or otherwise expand the states-court record only if the [petitioner] can satisfy § 2254(e)(2)'s stringent requirements." *Shinn v. Ramirez*, 596 U.S. 366, 384 (2022). Additional evidence is not required when the court can resolve the questions before it by reference to the state court record. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). This standard preserves the finality of the state court record and prevents federal courts from "reopen[ing] factual disputes that were conclusively resolved in the state courts." *Id.*

Furthermore, Habeas Rule 7 "permits federal habeas corpus courts to direct the parties to supplement the state court record with materials relevant to the Court's resolution of the petition." *Lynch v. Hudson*, No. 2:07-cv-948, 2010 WL 2076925, at *2 (S.D. Ohio May 24, 2010). Interpreting these Rules, the Sixth Circuit has recognized that expansion of the record in habeas cases "is not mandatory . . . and is left to the discretion of the trial judge." *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988); *see also Beuke v. Houk*, 537 F.3d 618, 653 (6th Cir. 2008).

Feagin has not shown that the evidence requested meets the stringent requirements of § 2254(e) or Habeas Rule 7. Based on my review at this stage of the proceedings, I determine that I have sufficient evidence from the state court record to determine Feagin's federal habeas corpus petition. As noted by Respondent, 17 of the 22 proposed exhibits were not part of the trial court record. Additionally, none of the exhibits proposed by Feagin constitute "new reliable evidence . . . that was not presented at trial" to support a claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Each of the proposed exhibits were available at the time of trial, whether or not they were used at that time. Therefore, expanding the record in support of claims not raised in the Petition is unnecessary.

Because the Petition can be decided on the information before the Court and is not of the type that could establish a claim for actual innocence, Feagin's Motion to Expand the Record (ECF Doc. 24) is denied.

### III.    Factual Background

The Ohio Fifth District Court of Appeals set forth the facts on direct appeal. These factual findings are presumed correct unless Feagin rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). While Feagin argues in his Traverse that the factual findings of the appellate court are incorrect, I find he has not met his burden by clear and convincing evidence. Rather, he simply disagrees with the court's findings and is attempting to re-litigate his case. (*See* ECF Doc. 25, pp. 9-33 "[t]he state court[] plainly misapprehended the record in making their findings of the historical facts and procedural history of the case  . . . . Feagin refutes that any ammunition fell from his person and/or lap while being extracted from the vehicle").

The Ohio Fifth District Court of Appeals summarized the facts of Feagin's convictions as follows:

> {¶ 2} This matter involves two separate incidents. The first took place on January 17, 2020 when appellant crashed his vehicle into another vehicle, went across the double yellow line and rolled his vehicle over. Officers responding to the scene found appellant was intoxicated, slurring his words, belligerent, and uncooperative. Appellant refused to give his name and resisted going to the hospital for apparent injuries. Appellant was therefore arrested and transported to the hospital. In a search incident to arrest, marijuana and cocaine were found on appellant's person. At the hospital, nursing staff found additional cocaine on appellant's person. Due to his erratic and uncooperative behavior, medical staff needed to sedate appellant in order to assess and treat his injuries. Appellant was released from police custody the same day.
>
> {¶ 3} The second incident took place on July 6, 2020. On that date, appellant and Amanda Craft were cruising around in a black Lincoln SUV drinking liquor and smoking marijuana. Appellant was driving and Craft was in the passenger seat. As they drove on King Street, Officer Mark Boggs of the Mansfield Police Department

was traveling in the opposite direction on his way to the jail with a prisoner in the back seat of his cruiser. As the two vehicles approached each other, appellant drove so far left of center that Boggs had to drive into a ditch to avoid being struck head-on. Boggs tuned around, pursued appellant, and requested assistance from other officers in the area.

{¶ 4} Two additional Mansfield Police Officers responded. Officer Jordan Moore pulled appellant over and officers Mark Boggs and Clay Blair arrived immediately after. Both Boggs' and Moore's cruisers were equipped with dashcams. When officers approached appellant's vehicle he rolled up the windows and locked the doors. Officers gave appellant orders to unlock and open the door. Instead of complying, appellant turned his body all the way toward Craft and appeared to be reaching to the right. Eventually either appellant or Craft unlocked the doors and appellant was extracted from the vehicle. Upon his removal from the vehicle, two rounds of ammunition fell from his lap. There were additional rounds of ammunition on the driver's side floorboard.

{¶ 5} Officers searched the Lincoln and discovered two .22 caliber handguns on the passenger side floorboard. Appellant was prohibited form possessing a handgun due to a 2018 conviction for possession of cocaine. In the back seat of the vehicle officers found a backpack. Appellant's hospital discharge papers from the January 17 accident were in the backpack. The backpack additionally contained 6.94. grams of cocaine, 20 tablets (5.07 grams) of alprazolam (Xanax)141 tablets of trazodone (Desyrel), 2 tablets (2.3 grams) of clonazepam (Klonopin) 1 tablet (.50 grams) of oxycodone, 1.3 grams (2 tablets) of penicillin, 5 tablets (.5 grams) of oxycodone (Roxicodone), 1 tablet (.49 grams) of oxycodone (Percocet), 13.44 grams of heroin, 152 tablets of diazepam (Valium), and 210 tablets (96.6 grams) of tramadol (Ultracet).

{¶ 6} Appellant was arrested on July 7, 2020. On September 3, 2020, the Richland County Grand Jury returned an indictment charging appellant as follows:

{¶ 7} Count one, trafficking in heroin in violation of R.C. 2925.03(A)(2), 2925.03(C)(6)(e), a felony of the second degree.

{¶ 8} County two, possession of heroin in violation of R.C. 2925.11(A), 2925.11(C)(6)(d), a felony of the second degree.

{¶ 9} Count three, trafficking in cocaine in violation of R.C. 2925.03(A)(2) 2925.03(C)(4)(c), a felony of the fourth degree.

{¶ 10} Count four, possession of cocaine in violation of R.C. 2925.11(A), 2925.11(C)(4)(b), a felony of the fourth degree.

{¶ 11} Count five, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(1)(a), a felony of the fourth degree.

{¶ 12} Count six, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(1)(a), a felony of the fourth degree.

{¶ 13} Count seven, aggravated possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(1)(a), a felony of the fifth degree.

{¶ 14} Count eight, aggravated possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(1)(a), a felony of the fifth degree.

{¶ 15} Count nine, trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(2)(a), a felony of the fifth degree.

{¶ 16} Count ten, trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(2)(a), a felony of the fifth degree.

{¶ 17} Count eleven, trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(2)(a), a felony of the fifth degree.

{¶ 18} Count twelve, trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(2)(a), a felony of the fifth degree.

{¶ 19} Count thirteen, possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(2)(a), a felony of the fifth degree.

{¶ 20} Count fourteen, possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(2)(a), a felony of the fifth degree.

{¶ 21} Count fifteen, possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(2)(a), a felony of the fifth degree.

{¶ 22} Count sixteen, possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(2)(a), a felony of the fifth degree.

{¶ 23} Count seventeen, having weapons under disability in violation of R.C. 2923.13(A)(3), 2923.13(B), a felony of the third degree.

{¶ 24} Count eighteen, having weapons under disability in violation of R.C. 2923.13(A)(3), 2923.13(B), a felony of the third degree.

{¶ 25} Count nineteen, improperly handing firearms in a motor vehicle in violation of R.C. 2923.16(B), 2923.16(I), a felony of the fourth degree.

{¶ 26} Count twenty, improperly handing firearms in a motor vehicle in violation of R.C. 2923.16(B), 2923.16(I), a felony of the fourth degree.

{¶ 27} Count twenty-one, carrying a concealed weapon in violation of R.C. 2023.12(A)(2), 2923.12(F)(1), a felony of the fourth degree.

6

{¶ 28} Count twenty-two, carrying a concealed weapon in violation of R.C. 2023.12(A)(2), 2923.12(F)(1), a felony of the fourth degree.

{¶ 29} Counts one through sixteen each carried two one-year firearm specifications pursuant to R.C. 2941.141(A) and two specifications for forfeiture of a gun in a drug case pursuant to R.C. 2941.1417(A). Counts seventeen through twenty-two each carried two specifications for forfeiture of a weapon pursuant to R.C. 2941.1417(A).

{¶ 30} Appellant pled not guilty to the charges and a jury trial was set for December 1, 2020. Although represented by counsel, appellant filed a plethora of pro se motions including motions to remove counsel and to disqualify the judge assigned to the case. Counsel for appellant also filed a motion to determine appellant's competency.

{¶ 31} Trial was eventually held on September 20, 2021, at the conclusion of which appellant was found guilty as charged. Appellant was subsequently sentenced to an aggregate prison term of 8 to 12 years and an additional 2 years for the firearm specifications.

*State v. Feagin*, 2022-Ohio-3641, 2022 WL 6949422, at *1-3 (Ohio Ct. App., Oct. 12, 2022)

("*Feagin I*").

## IV.     Procedural History

### A.     State Court Conviction

On September 3, 2020, the Richland County Grand Jury indicted Feagin of the following

offenses: Count one, trafficking in heroin in violation of Ohio Revised Code ("O.R.C.")

§§ 2925.03(A)(2) and (C)(6)(e), a felony of the second degree; count two, possession of heroin

in violation of O.R.C. §§ 2925.11(A) and (C)(6)(d), a felony of the second degree; count three,

trafficking in cocaine in violation of O.R.C. §§ 2925.03(A)(2) and (C)(4)(c), a felony of the

fourth degree; count four, possession of cocaine in violation of O.R.C. §§ 2925.11(A) and

2925.11(C)(4)(b), a felony of the fourth degree; count five, aggravated trafficking in drugs in

violation of O.R.C. §§ 2925.03(A)(2) and (C)(1)(a), a felony of the fourth degree; count six,

aggravated trafficking in drugs in violation of O.R.C. §§ 2925.03(A)(2) and (C)(1)(a), a felony of

the fourth degree; count seven, aggravated possession of drugs in violation of O.R.C.

§§ 2925.11(A) and (C)(1)(a), a felony of the fifth degree; count eight, aggravated possession of drugs in violation of O.R.C. §§ 2925.11(A) and (C)(1)(a), a felony of the fifth degree; count nine, trafficking in drugs in violation of O.R.C. §§ 2925.03(A)(2) and (C)(2)(a), a felony of the fifth degree; count ten, trafficking in drugs in violation of O.R.C. §§ 2925.03(A)(2) and (C)(2)(a), a felony of the fifth degree; count eleven, trafficking in drugs in violation of O.R.C. §§ 2925.03(A)(2) and (C)(2)(a), a felony of the fifth degree; count twelve, trafficking in drugs in violation of O.R.C. §§ 2925.03(A)(2) and (C)(2)(a), a felony of the fifth degree; count thirteen, possession of drugs in violation of O.R.C. §§ 2925.11(A) and (C)(2)(a), a felony of the fifth degree; count fourteen, possession of drugs in violation of O.R.C. §§ 2925.11(A) and (C)(2)(a), a felony of the fifth degree; count fifteen, possession of drugs in violation of O.R.C. §§ 2925.11(A) and (C)(2)(a), a felony of the fifth degree; count sixteen, possession of drugs in violation of O.R.C. §§ 2925.11(A) and (C)(2)(a), a felony of the fifth degree; count seventeen, having weapons under disability in violation of O.R.C. §§ 2923.13(A)(3) and (B), a felony of the third degree; count eighteen, having weapons under disability in violation of O.R.C. §§ 2923.13(A)(3) and (B), a felony of the third degree; count nineteen, improperly handing firearms in a motor vehicle in violation of O.R.C. §§ 2923.16(B) and (I), a felony of the fourth degree; count twenty, improperly handing firearms in a motor vehicle in violation of O.R.C. §§ 2923.16(B) and (I), a felony of the fourth degree; count twenty-one, carrying a concealed weapon in violation of O.R.C. §§ 2923.12(A)(2) and (F)(1), a felony of the fourth degree; and count twenty-two, carrying a concealed weapon in violation of O.R.C. §§ 2923.12(A)(2) and (F)(1), a felony of the fourth degree. (ECF Doc. 11-1, pp. 6-26).

Counts one through sixteen each carried two, one-year firearm specifications pursuant to O.R.C. § 2941.141(A) and two forfeiture specifications of a gun in a drug case pursuant to

8

O.R.C. § 2941.1417(A). Counts seventeen through twenty-two each carried two forfeiture of a weapon specifications pursuant to O.R.C. § 2941.1417(A). (*Id.*).

On October 8, 2020, Feagin pled not guilty to the indictment. (*Id.* at p. 31). At that time, Feagin requested that counsel be appointed to represent him. (*Id.*).

Feagin, through counsel, filed a motion for a competency evaluation on April 2, 2021. (*Id.* at p. 32). The state trial court ordered a competency evaluation on April 6, 2021. (*Id.* at pp. 33-34).

On May 28, 2021, the court docketed a journal entry that stated:

> This matter came before the Court on its motion to recuse itself from the above-captioned matter. The Court notes that defendant has filed several motions[1] in the above referenced matters as well as the Supreme Court of Ohio that allege the possibility of a conflict of interest concerning the defendant.
>
> Said motions have stayed the proceedings and caused counsel an undue delay in moving this matter forward. The Court believes that it can proceed fairly and without prejudice however, by recusing itself from this matter, that defendant may have any fears alleviated and can therefore proceed.
>
> The Court hereby recuses itself and requests that a visiting judge be assigned to expedite the adjudication of the defendant cases.

(*Id.* at p. 35). On July 1, 2021, the Ohio Supreme Court appointed a visiting judge to hear Feagin's case. (*Id.* at p. 36).

On July 7, 2021, the state trial court docketed a journal entry noting that Feagin had "filed numerous pro se motions" despite being represented by counsel. (*Id.* at p. 37). The court concluded that because Feagin was not entitled to both represent himself and have an attorney represent him according to Ohio law, that it was under no "obligation to consider these motions, and, therefore, summarily overrule[d] them." (*Id.*).

---

[1] Several journal entries in the state court history reference pro se motions filed by Feagin. These motions are not part of the state court record provided by the Respondent and not needed for the adjudication of Feagin's Petition.

Following the competency evaluation the State of Ohio and Feagin's defense counsel stipulated on July 27, 2021, that Feagin was competent to stand trial. (*Id.* at p. 39). An August 11, 2021 journal entry placed Feagin's case back on the trial docket for September 23, 2021. (*Id.* at p. 41).

Following a jury trial, Feagin was found guilty of all 22 counts in the indictment. (*Id.* at pp. 48-49). The court journalized an entry sentencing Feagin to an aggregate term of eight to twelve years in prison plus an additional two-year term for firearm specifications on November 17, 2021. (*Id.* at. pp 50-51). In that entry, the court awarded Feagin 336 days of jail time credit. (*Id.* at p. 52).

## B.     Direct Appeal

Feagin, through counsel, appealed his convictions and sentence to the Fifth District Court of Appeals on December 13, 2021. (*Id.* at p. 53). Feagin filed his appellant's brief on April 22, 2022. (*Id.* at pp. 55-62). In it, he raised the following five assignments of error:

1. Whether the trial court erred by failing to dismiss the case for not affording the defendant a trial within the statutory time limit, pursuant to ORC 2945.71.

2. Whether the trial court erred by excluding the police body camera of the police officer who resigned due to disciplinary reasons to be seen and heard by the jury.

3. Whether the trial court erred by finding the chain of custody of the evidence did not affect the integrity of the evidence.

4. Ineffective assistance of counsel by failing to subpoena the police officer who resigned due to disciplinary reasons prior to trial.

5.      Ineffective assistance of counsel by failing to call the owner of the vehicle as a witness.

(*Id.* at p. 57). The State replied on July 13, 2022. (*Id.* at pp. 63-96). On October 12, 2022, the Fifth District Court of Appeals overruled each assignment of error and affirmed the judgment of the trial court. (*Id.* at pp. 97-114; *see also Feagin I*, 2022 WL 6949422).

On October 24, 2022, Feagin filed a pro se motion, requesting the Fifth District Court of Appeals to reconsider its decision pursuant to Ohio Appellate Rule 26(A). (ECF Doc. 11-1, pp. 116-21). The appellate court found that Feagin's motion was untimely and denied the motion on November 7, 2022. (*Id.* at pp. 122-24).

On November 21, 2022, Feagin, acting pro se, filed a timely notice of appeal in the Ohio Supreme Court raising the following five propositions of law:

> The court of appeals abused its discretion and denied appellant his sixth amendment due process right to adequate and fair appellate review when it: (1) intentionally miscalculated the speedy trial statue and application of the triple count provision; (2) misapplied and miscalculated the tolling time on the competency determination process; (3) the court of appeals failed to consider the holding set forth in *State v. Mincy* (1982), 2 Ohio St. 3d 6 and its decision creates a conflict with *State v. Broerman*, 1983 Ohio App. Lexis 12003 (case reversed); *State v. Ramey*, 132 Ohio St. 3d 309, 2012-Ohio-2904, 971 N.E.2d 937, 2012 Ohio Lexis 1657; *State v. Saffell*, 35 Ohio st. 3d 90, 518 N.E.2d 934, 1988 Ohio Lexis 121[.] The fifth appellate district court decision creates a conflict within its own district. See, *State v. Thacker*, 2019-Ohio-1305, 2019 Ohio App. Lexis 1401, 134 N.E. 3d 837, 2019 WL 1513632; *State v. Stickle*, 2006-Ohio-3504, 2006 Ohio App. Lexis 3409.
>
> Whether the trial court erred by finding the chain of custody of the evidence did not affect the integrity of the evidence.
>
> Whether the appellate court abused its direction and committed plain error when it intentionally misconstrued the factual record in the determination of: (i) the state argued that Officer Moore was not the only officer present when the drugs were seized from appellant's vehicle, laid out on the hood of the vehicle, photographed and weighed; (2) the evidence bags were sealed and initialed by officer Mark Boggs and not Officer Moore. This video from police dash camera footage clearly show that the appellate court

11

determination are not based on the undisputed factual evidence of the dash cam video.

Whether the appellate court abused its discretion when it denied the claim of ineffective assistance of counsel by failing to subpoena the police officer who resigned due to disciplinary reasons prior to trial.

Whether the appellate court abused its discretion when it denied the claim of: ineffective assistance of counsel by failing to call the owner of the vehicle as a witness.

(*Id.* at pp. 125-41). The state of Ohio filed its memorandum in opposition of jurisdiction on December 16, 2022. (*Id.* at pp. 161-80). On January 31, 2023, the Ohio Supreme Court declined to accept jurisdiction of the appeal under Supreme Court Practice Rule 7.08(B)(4). (*Id.* at p. 181; *see also State v. Feagin*, 201 N.E.3d 917 (Ohio 2023) (table) ("*Feagin II*").

On January 19, 2023, Feagin filed a pro se delayed application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (ECF Doc 11-1, pp. 256-89). Ohio's Fifth District Court of Appeals denied the application as untimely on January 31, 2023. (*Id.* at pp. 290-91). Feagin appealed the denial to the Ohio Supreme Court on March 3, 2023. (*Id.* at pp. 292-93). The Ohio Supreme Court declined jurisdiction on May 23, 2023. (*Id.* at p. 316; *see also State v. Feagin*, 209 N.E.3d 716 (Ohio 2023) (table) ("*Feagin III*")).

## C.    Post-Conviction Proceedings

On December 1, 2022, while his direct appeal was pending, Feagin filed a pro se petition to vacate his sentence with the state trial court. (ECF Doc. 11-1, pp. 182-99). On January 13, 2023, the court found that Feagin's petition was timely filed (*id.* at p. 210) but that his arguments

12

were barred by the doctrine of res judicata because they could have been raised in his direct appeal. (*Id.* at p. 217).

Feagin appealed the denial of his post-conviction relief petition, pro se, on February 10, 2023. (*Id.* at p. 219). In his April 14, 2023 appellate brief, Feagin raised the following seven assignments of error:

I. Whether the trial court abused his discretion when he intentionally misconstrued appellant's claim and argument[.]

II. Whether appellant was denied his fourteenth amendment due process protection to a fair trial due to prosecutorial misconduct, where the prosecutor unlawfully dismissed the traffic charges[.]

III. Whether appellant was denied his fourteenth amen[d]ment due process right to a fair trial due to prosecutor misconduct where he failed to provide discovery of the records from the traffic citation, or the motion to dismiss the traffic charges[.]

IV. Whether the municipal judge lack of subject matter jurisdiction to transfer the municipal traffic case to the common pleas court.

V. Whether the trial court abused her discretion and erred as a matter of law in her findings of fact that the prosec[u]tor chose not to prosecute the traffic charges, where there is no record journal entry of dismissal of those charges[.]

VI. Whether the trial court abused its discre[t]ion and denied the appellant a 14 amendment right to a fair and adequate hearing where it determined that the officer had probable cause to conduct an initial terry stop without providing the appellant with a suppression hearing to challenge the terry stop[.]

VII. Whether the trial court abused its discretion and erred as a matter of law in its findings that the sate chose in its discretion not to charge those misdemeanor offenses with the felony where those findings are not supported by the record[.]

(*Id.* at pp. 221-30). The state of Ohio filed its responsive brief on June 7, 2023. (*Id.* at pp. 231-38). Feagin moved to supplement the appellate record to include evidence from other cases that he argued supported his appeal on June 9, 2023. (*Id.* at p. 239). The appellate court granted

Feagin's motion to supplement on July 13, 2023. (*Id.* at p. 240). The decision of the sentencing court was affirmed on appeal on August 14, 2023. (*Id.* at pp. 241-49).

Feagin moved the appellate court for reconsideration on August 24, 2023. (*Id.* at pp. 251-53). The appellate court denied the motion on October 10, 2023. (*Id.* at pp. 254-55).

## V.      Federal Habeas Corpus Petition[2]

On July 3, 2024, Feagin filed his federal habeas corpus petition, asserting the following Grounds for Relief:

> **Ground One:**
> The trial court erred by failing to dismiss the case for not affording the defendant a trial within the statutory time limit, pursuant to the 5th 6th 14th amendment rights due process and a speedy trial under the U.S[.] Constitution.
>
> **Supporting Facts:**
> The petitioner was arrested on July 6, 2020 and was not brought to trial until September 23, 2021, over 14 months after arrest. The trial court failed to get the petitioner to trial within the 90-day clock and/or the 270-day clock in violation of his 6th and 14 Amendment Right to a speedy trial.
>
> . . .
>
> [A not guilty by reason of insanity] evaluation took place on . . . April 15, 2021 within the 30-day time frame in which the evaluation had to be given. The state prosecutor Emily Hall along with the defense attorney Corley chose not to make the determination until August 11, 2021. Approximately 94 days elapsed from the time the evaluation was given and the determination was made calculating $94 \times 3 = 282$ days applying the triple count provision which clearly applied to the petitioner as he was being held only on criminal case [] 20-CR-609, and 20-CR-467. Both cases were indicted at the same time. The trial court ignored clearly established federal law as set forth by the Supreme Court in which the defendant was not brought to trial within the time frame specified by the Speedy Trial Act in violation of his 5th 6th 14th Amendment rights to a speedy trial. Therefore the trial court was in violation of the speedy trial act and the trial and appellate court misapplied the triple count provision.

---

[2] Feagin's petition was 75 pages in total. Several grounds include block quotes from appellee briefs or decisions of state courts. Here, the grounds have been presented in a manner that attempts to preserve the content of the arguments as presented in the original but cleaned up for ease of reading in the Report and Recommendation. The grounds have been considered, in their entirety, in making the recommendations to the District Court.

14

**Ground Two:**
The trial court erred by excluding the police body camera of the police officer who resigned due to disciplinary reasons to be seen and heard by the jury in violation of his 5th 6th 14th amendment right to due process under the U.S. Constitution.

**Supporting Facts:**
There was no body camera worn on the day in question and counsel did not agree that the state was diligent in trying to locate Jordan Moore for trial. Jordan Moore handled the evidence and solely transported the evidence to the police department. . . . Jordan Moore had a history of disciplinary actions before his resignation which the related evidence to support this argument was not presented to the court in violation of his 5th 6th 14th Amendment right to Due Process under the U.S. Constitution.

**Ground Three:**
The trial court erred by finding the chain of custody of the evidence did not affect the integrity of the evidence in violation of his 5th 6th 14th amendment rights to due process under the U.S. Constitution.

**Supporting Facts:**
Jordan Moore had sole possession of the fungible evidence and did not testify nor was a chain of custody document provided by the state. . . . There was no testimony from Tambasco in relation to the brown substance which was submitted to the lab and 2 of the 5 bags were tested and not weighed by Tambasco which is clear from his testimony. . . . Fungible evidence has to be tracked and documented down to the material moment which is the performance of the lab test. This was not proven by the state. . . . Therefore, the evidence was insufficient as a matter of law to sustain the conviction in violation of petitioner's 5th 6th 14th Amendment Rights to Due Process under the U.S[.] Constitution and the court erred by allowing the evidence to be introduced without a sufficient chain of custody established up to the material moment.

. . .

**Ground Four:**

Petitioner was denied the effective assistance of appellate counsel when counsel failed to raise the following claim. To wit: Ineffective assistance of counsel by counsel failing to subpoena the police officer who resigned due to disciplinary reasons prior to trial in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

**Supporting Facts:**

. . .

15

Trial counsel failed to ensure that officer Moore was present at trial, officer Moore was the star witness for the state and as responsible for conveying the fungible evidence from the crime scene back to the police department. The record does not show that Attorney Corley ever agreed that the state had shown that the witness was unavailable or that the state had shown that the state was diligent in attempting to locate him. Therefore, the trial counsel was ineffective for his failure to address the issue and absence of officer Moore who was a key witness and necessary for cross examination and introducing impeachment evidence based on his record of disciplinary actions in violation of petitioner's 5th 6th 14th amendment rights under the U.S[.] Constitution. . . .

**Ground Five:**
Ineffective assistance of counsel by failing to call the owner of the vehicle as a witness.

**Supporting Facts:**
Trial counsel failed to call the owner of the vehicle as a witness rendering trial counsel ineffective when the owner of the vehicle could have testified to who when and why? The testimony was necessary to develop the facts in relation to who was originally in possession of the SUV. The co-defendant testified that the petitioner picked her up in the vehicle and implicated the petitioner as the individual who was in possession of the SUV. . . . Therefore, counsel was ineffective for his failure [to] call the owner of the vehicle as a witness which would have allowed impeachment evidence to be introduced of the co-defendant and establish a motive to why her story had changed from the day in question and her plea agreement to testify on behalf of the state.

. . .

**Ground Six:**
Petitioner was denied the effective assistance of appellate [counsel] when he failed to raise the following claim. To wit: (1) The state argued that officer Moore was not the only officer present when the drugs were seized from petitioner[s] vehicle laid out on the hood of the vehicle, photographed and weighed; (2) the evidence bags were sealed and initiated by officer Boggs and not officer Moore. The video from the dash camera footage clearly show that the appellate court determinations are not based on the undisputed factual evidence of the dash cam video in violation of his 5th 6th 14th amendment rights to due process.

**Supporting Facts:**
The drug evidence was not weighed nor was the evidence placed in sealed bags at the scene by the officers. Officer Boggs left the scene before the evidence was transferred by officer Moore. Petitioner asserts that he addressed the fact to trial counsel that the officers could be seen on video planting and tampering with the evidence that was used to connect petitioner to the alleged drugs allegedly located in the green back pack. The dash camera video submitted for the record on appeal

clearly shows undisputed evidence of the officer[s]planting and tampering with the paper documents in violation of petitioner's 5TH 6TH 14TH amendment rights to due process under the U.S[.] Constitution. There is video evidence from Mark Boggs . . . and Officer Moore dash camera video . . . which was submitted as part of the record for appeal . . . that shows these determinations were not based on factual evidence. The record is clear that officer Boggs leaves the crime scene with the inmate that was in the backseat of his cruiser, which can be seen on (state exhibit #8) and Jordan Moore dash camera video[.] . . . Also it was testified to at trial by Boggs and Blair that the evidence was just collected in bags by the officer and no testimony given to indicate that these bags were sealed at any time at the crime scene. There was no DNA or forensic evidence connecting petitioner to the drug . . . .

. . .

**Ground Seven:**
Petitioner was denied effective assistance of appellate counsel when appellate counsel failed to raise ineffective assistance of trial counsel in violation of due process and equal protection of law under the 5th 6th 14th amendments of the United States Constitution which prevented the Petitioner from presenting a complete defense.

**Supporting Facts:**
Feagin's appellate counsel failed to comply with App. R. 16 (A)(7) which requires a petitioner to include in his brief an argument containing the contention of the petitioner with respect to each assignment of presented for review and the reason in the support of the . . . contentions, with citations to the authorities, statu[t]es, and parts of the record on which appellate relies. Mr[.] Feagin, asserts that appellate counsel failed to include in [h]is argument the contentions for each assignment presented for review and the reason in support with citations and authorities as part of the record, therefore denying Mr[.] Feagin his 5th 6th 14th amendments to due process and the effective assistance of counsel.

. . .

**Ground Eight:**
Petitioner was denied the effective assistance of appellate [counsel] when he failed to raise the following claim. To wit: When appellate counsel failed to challenge and/or correct the inaccuracies of the record under App. R. P(E) correction or modification of the record in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

**Supporting Facts:**
Appellate counsel failed to challenge and/or correct the trial record in relation to statements made at trial for inaccuracies. . . . This is not an accurate record. Counsel failed to correct the record for review by the appellate court to the denial of

17

petitioner's 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

. . .

**Ground Nine:**
Petitioner was denied the effective assistance of appellate counsel when he failed to raise the following claim. To wit: Raise that trial counsel was ineffective for failure to object or challenge that the evidence was insufficient as a matter of law to convict petitioner of possessing and trafficking heroin weighing more than 10 grams in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

**Supporting Facts:**
The lab technician (Tambasco) never weighed the alleged drugs and testified to only testing 2 of the alleged 5 bags of brown substance that were seized by the Mansfield Police Department . . . . No officer testified to how the drugs were weighed or what procedures were implemented in order to determine the weight of the substance. No state witness testified to removing exterior packaging in order to perform the weighing of the substance. It was never mentioned that the drugs were removed from the bags or separated from the bags in which they were originally located by the officers or the lab tech Tambasco in order to weight the drugs. . . . Therefore, the evidence presented by the state was insufficient to sustain a conviction for trafficking heroin weighing more than 10 grams in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

. . .

**Ground Ten:**
Petitioner was denied the effective assistance of appellate [counsel] when he failed to raise the following claim. To wit: The trial court erred to the denial of his 5TH 6TH 14TH amendment rights to due process under the U.S[.] Constitution and prejudice to petitioner when it convicted him of prior convictions based on insufficient evidence.

**Supporting Facts:**
The state presented a judgment entry for July 21st 2020. The petitioner was arrested and charged with the weapons on July 6, 2020. . . . The petitioner was not under disability at the time he was charged with the weapons for the incident on July 6, 2020. When a prior conviction actually transform[s] the crime itself by increasing its degree. The prior conviction is an essential element of the crime and must be proved beyond a reasonable doubt by the state. Therefore, the evidence was insufficient to sustain a conviction for weapons under disability in violation of his 5th 6th 14th amendment rights under the U.S[.] Constitution.
. . .

18

**Ground Eleven:**
Petitioner was denied the effective assistance of appellate counsel when counsel failed to raise the following claim. To wit: That the evidence was insufficient to sustain a conviction for the weapons charges in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

**Supporting Facts:**
There was no physical or scientific evidence connecting petitioner to the weapons. . . . Mr. Feagin's co-defendant admitted several times during the incident that the weapons belonged to her and the prosecutor allowed her to change her position during her testimony at trial. . . . The co-defendant also testified that she never mentioned seeing the weapons or that she made Mr. Feagin aware of the weapons in the vehicle at any time during the day of the arrest. Therefore, the evidence was insufficient to sustain the conviction for the weapons charges in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution. . . .

. . .

**Ground Twelve:**
Petitioner was denied the effective assistance of appellate counsel when he failed to raise the following claim. To wit: Raise that the evidence was insufficient to sustain a conviction for the possession and trafficking of drugs charges in violation of his 5th 6th 14th amendment rights under the U.S[.] Constitution.

**Supporting Facts:**
There was no fingerprints or DNA evidence connecting Petitioner to the drug evidence. . . . The co-defendant stated several times at the scene that all the sh[*]t was hers. . . . There was no testimony given at trial that Mr[.] Feagin was seen with the back pack containing the drugs, or that there was any physical evidence connecting Mr. Feagin to the alleged drugs. The argument was raised at trial that the documents used in connection to the petitioner had been planted there by officers Moore and/ or Blair at the scene. . . . Attorney Corley never presented any evidence to the court or jury to support these statements in violation of petitioner's 5th 6th 14th amendment rights to due process under the U.S[.] Constitution. Those document[s] was also used to connect Mr. Feagin to the drugs allegedly located in the green back pack. . . .
. . .

**Ground Thirteen:**
Petitioner was denied the effective assistance of appellate counsel when counsel failed to raise the following claim. To wit: Counsel failed to raise that trial counsel was ineffective for failure to object to prosecutorial misconduct when petitioner was denied a fair trial due to the prosecutions use of knowingly perjured testimony in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution. .

19

**Supporting Facts:**
There is undisputed video evidence which was submitted as a part of the record on appeal from the police cruiser's dash camera footage recorded on the day in question[] showing officers Boggs, Moore and Blair tampering and planting evidence which was located in a pink back pack that was located on the rear driver-side of the SUV. . . .[t]hat was later used to connect Petitioner to the alleged drugs allegedly located in the green back pack. Officer Boggs can be seen removing a folder from the over-head driver compartment and placing it on the driver's seat and can also be heart stating that's Feagin. Officer Boggs can clearly be seen placing the folder back in its original; location in the over-head driver[']s compartment. . . . Later in the video Officer Blair removes the same folder which is clear on the dash camera video submitted as part of the record . . . and Blair then removes several pieces of paper documents then walks away from the Lincoln SUV and disappears out of the view of the cruiser dash camera. When officer Blair returns he no longer has the paper documents in hand. Those paper documents end up at trial as part of the evidence used to connect Mr. Feagin to the drugs allegedly located in the green back pack. . . . Officer Blair can also be seen on the dash camera video . . . removing the Ohio health document from a pink back pack which was photographed on the back seat driver['s] side of the SUV . . . and can clearly be seen in officer Blair's hand. Officer Blair committed perjury and the prosecutor knowingly presented false evidence and allowed perjured testimony to go uncorrected . . . . The Ohio health document is removed before the green back pack is located which was photographed on the rear passenger side behind the seat. . . . That document was also used to connect Mr. Feagin to the drugs allegedly located in the green back pack. Attorney Corley stated that officer Moore had a history of disciplinary actions leading up to his termination but never presented the evidence to the court. . . . Attorney Corley never presented any evidence to the court or jury to support [statements made at trial that Officer Moore had a history of tampering with evidence]. Those documents were also used to connect Mr. Feagin to the drugs allegedly located in the green back pack. . . . Therefore, trial counsel was ineffective for his failure to impeach the state's witnesses and/or present the supporting evidence to prove to prosecutor introduced perjured testimony and false evidence to the trial court and jury in violation of petitioner's 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.
. . .

**Ground Fourteen:**
Petitioner was denied the effective assistance of appellate counsel when he failed to raise the following claim. To it: Counsel failed to raise that trial counsel was ineffective when, trial counsel failed to raise that the trial court erred when it denied petitioner/defendant had been denied his right to speedy trial pursuant to the Fifth, Sixth and Fourteenth amendment rights to due process under the United States Constitution.

20

**Supporting Facts:**

The petitioner was arrested on July 6th and was not brought to trial until September 23rd 2021 over 14 months after arrest in violation of his 5th 6th 14th amendment rights under the U.S[.] Constitution. This is prima facie evidence, and as a general rule, a delay of nearly a year is considered presumptively prejudicial. The trial court was in violation of petitioner's right to a speedy trial. Counsel was ineffective for his failure to object to the tolling of the petitioner's speedy trial rights based on the delay of making the determination in regards to the competency evaluation which was compete on April 15, 2021. The state attempted to toll the time from April 7, 2021 though August 11[,] 2021 which equals 116 days' x 3 for a total of 348 days. Petitioner asserts that he filed several motion[s] for dismissal for violation of his speedy trial rights which were submitted as part of the record for the appeal. There was a pretrial hearing on or about July 23, 2021 which was submitted as part of the record for appeal in which the prosecutor was given an option to defend against the pro se motions that had been filed by petitioner or allow the petitioner to assert his rights to a speedy trial without tolling the days form the motion filed by petitioner[]. Trial counsel was ineffective for his failure to file a motion to dismiss based on the presumptive delay of over a year before Mr. Feagin was brought to trial. This denied him of a state created liberty interest that is protected by federal due process.

. . .

**Ground Fifteen:**

Petitioner was denied the effective assistance of appellate counsel when counsel failed to raise the following claim. To Wit: Counsel failed to raise ineffective [assistance of] trial counsel for his failure to force subpoena or challenge the lack of presence of police officer Jordan Moore that resigned prior to trial due to disciplinary actions in violation of his 5th 6th 14th amendment rights under the U.S[.] Constitution.

**Supporting Facts:**

The record does not show that defense counsel ever agreed that the state had shown that the witness was unavailable or that the state was diligent in attempting to locate Officer Moore. Moore was the key witness as he transported the evidence, and Corley stated a[t] trial that Moore had a history of going rogue and was subject to disciplinary actions . . . . The evidence that was mentioned by Attorney Corley was never presented to the court. Petitioner asserts that on several occasions he addressed trial counsel about the fact that the documents being used to connect him to the alleged drugs were not originally located in the green back pack and the video evidence showed the officers at the scene planting and tampering with these paper documents in order to connect Mr[.] Feagin to the drugs. Petitioner also asse[r]ts that h[e] questioned his trial counsel on the first day of trial as to why officer Moore was not present. The petitioner filed several motion[s] in regards to the testimony anticipated by the officer[s] and statements in relation to the events that took place on the day of his arrest. Mr. Feagin also filed paperwork and motions in which he referenced a request for a Frank[']s hearing. Therefore, Attorney Corley was

ineffective for his failure to vigorously pursue and compel the witness Moore through capias, show cause order and/or sanctions after he was subpoenaed but failed to appear at trial in violation of his 5th 6th 14th amendment rights under the U.S[.] Constitution.

. . .

**Ground Sixteen:**
Petitioner was denied effective assistance of appellate counsel when he failed to raise the following claim. To wit: Trial counsel was ineffective for his failure to object to partial showing of the dash camera footage where the remaining parts would have showed the police officers Moore and Blair planting evidence in the book bag and counsel also failed to introduce impeachment evidence using the videos, reports and photos of evidence that was taken at the scene to challenge the inconsistencies and perjured testimony in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

**Supporting Facts:**
Counsel had impeachment evidence in the form of videos reports and photos which show officers planting and tampering with evidence and removing documents from the over-head driver side compartment . . . and these video[s] showing Officer Blair removing the Ohio health document from the pink back pack that was located on the rear driver side of the SUV. . . . Attorney Corley failed to impeach key state witnesses. These photos and videos were submitted as part of the record for appeal . . . . Mr. Feagin asserts that he instructed and/or requested for his trial counsel to impeach the state's witnesses as to where this alleged paperwork was found and to present the video evidence that supported the argument that the officer[s] had planted and tampered with the evidence. . . .The evidence that was mentioned by Attorney Corley was never presented to the court. Trial counsel was ineffective for his failure to impeach the witnesses and assert that the prosecutor allowed knowingly perjured testimony and false evidence to be presented to the trial court in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

. . .

**Ground Seventeen:**
Petitioner was denied the effective assistance of appellate counsel when he failed to raise the following claim. To wit: Trial counsel was ineffective for his failure to seek and or inquire into reports of the forensic analysis regarding the DNA and/or fingerprint testing results of the weapons and ammunition, in violation of the 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

**Supporting Facts:**
Counsel failed to request and/or seek discovery from the state that could have allowed petitioner to attack the testimony of state[']s expert in relation to the lack

22

of forensic evidence. . . . Counsel never cross examined Dawn Fryback at trial who was the chief analyst about any test performed and/or any results that may have been beneficial to the defense of the petitioner. There was no DNA and/or fingerprint evidence connecting petitioner to the guns, drugs or ammunition. Therefore, counsel was ineffective for his failure to cross examine Dawn Fryback and question her as to what test[s] were performed and the lack of physical scientific evidence in relation to the weapons, drugs and ammunition in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

. . .

**Ground Eighteen:**
Petitioner was denied the effective assistance of appellate counsel when he failed to raise the following claim. To wit: Raise ineffective assistance of counsel for trial counsel failing to challenge or raise an objection to the jury instructions based on accomplice testimony at trial in violation of his 5th 6th 14th amendment due process rights under the U.S[.] Constitution.

**Supporting Facts:**
Petitioner's co-defendant testified on behalf of the state during trial and trial counsel neither objected to the jury instructions, nor asked for the mandatory accomplice instructions. . . . Counsel was therefore ineffective for his failure to object to and/or request the mandatory accomplice jury instruction to the prejudice of the petitioner in violation of his 5th 6th 14th amendment right to effective assistance of counsel and due process protections under the U.S[.] Constitution.

. . .

**Ground Nineteen:**
The petitioner was denied the effective assistance of appellate counsel where counsel failed to raise on direct appeal that the trial court erred to the denial of petitioners 5th 6th 14th amendment rights to due process under the U.S[.] Constitution and prejudice of petitioner by failing to give the mandatory jury instructions.

**Supporting Facts:**
The trial court failed to fully and completely charge the jury by omitting the mandatory accomplice cautionary jury instructions. Mr[.] Feagin's co-defendant testified on behalf of the state and gave incriminating testimony against Mr. Feagin. . . . When an alleged accomplice testifies against a defendant in a jury trial, the trial court must give the required cautionary instructions regarding the testimony of an alleged accomplice and counsel was ineffective for his failure to raise this issue in violation of petitioner's 5th 6th 14th amendment rights under the U.S[.] Constitution.

. . .

23

**Ground Twenty:**

Petitioner was denied the effective assistance of appellate counsel when he failed to raise the following claim. To wit: Appellate counsel was ineffective for his failure to raise ineffective assistance of trial counsel in violation of petitioner's 5th 6th 14th amendment rights to due process under the U.S[.] Constitution where trial counsel failed to file a motion to dismiss the charges based on the reason that petitioner had been denied his right to speedy trial.

**Supporting Facts:**

The petitioner was arrested on July 6, 2020 and was not brought to trial until over 14 months later in September of 2021. The state used the NGRI determination to toll the time from April 7, 2021 until August 11, 2021 which equals 116 days. Petitioner was still not taken to trial until September 23, 2021 after 14 months of delay in violation of his speedy trial rights. The competency evaluation took place on April 15, 2021. There is a 40[-]day timeframe from when the evaluation is ordered till the evaluation has to be completed and the report submitted to the courts with the results from the evaluation. The evaluation and report were completed within the 40[-]day timeframe. The trial and appellate court misapplied the triple count provision and miscalculated the days of tolling in violation of his 5th 6th 14th amendment rights to a speedy trial, effective assistance of counsel and due process under the U.S[.] Constitution.

. . .

**Ground Twenty-One:**

Petitioner was denied the effective assistance of appellate counsel when counsel failed to raise the following claim. To wit: The trial court erred when it convicted petitioner of prior convictions for having weapons under disability based upon insufficient evidence in violation of petitioner['s] 5th 6th 14th amendment rights to due process under the U.S[.] Constitution.

**Supporting Facts:**

The petitioner was convicted on July 21st of 2020 the day of arrest for the weapons charges was July 6, 2020. . . . The State presented a judgment entry dated for July 21, 2021. When a prior conviction actually transforms the crime itself by increasing the degree.

The prior conviction is an essential element of the crime and must be proved by the state. Therefore, the evidence was insufficient to sustain a conviction for having weapons under disability in violation of petitioner's 5th 6th 14th amendment rights to due process[.] Mr. Feagin was not convicted until July 21st 2021 after the alleged incident occurred involving the weapons charges.

. . .

24

**Ground Twenty-Two:**
The petitioner was denied the effective assistance of counsel where counsel failed to raise on direct appeal that petitioner was denied a fair and unbiased trial due to the prosecution['s] use of knowingly perjured testimony resulting in prosecutorial misconduct and discriminatory prosecution depriving petitioner of his 5th 6th 14th amendment rights to due process and equal protection of the law under the U.S[.] Constitution.

**Supporting Facts:**
The prosecution used perjured testimony and false evidence which was on clear display in the police dash camera video of Moore, and Boggs that was submitted for the record on appeal. Counsel had impeachment evidence in the form of videos[,] reports and photos . . . which show officers planting and tampering with evidence and removing documents from the over-head driver side compartment and the pink back pack which was located on the rear driver side if the SUV. . . . These are not the places testified to under oath by Officer's Moore and Blair. Attorney Corley failed to impeach key state witnesses. These photos and videos were submitted as part of the record for appeal. . . . Therefore, the prosecutor allowed perjured testimony and knowingly presented false evidence in violation of petitioner's 5th 6th 14th amendment rights to due process.

. . .

**Ground Twenty-Three:**
The court of appeal[s] erred and denied petitioner his fifth sixth and fourteenth U.S[.] Constitutional amendment due process protection[s] where it based its decision on an incomplete record, and the Ohio court of appeals rendered an objectively unreasonable decision in denying each of petitioner['s] claims resulting in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**Supporting Facts:**
The petitioner asserts that the court of appeals erred and denied his due process protection right to a fair appellate review where the decision was based on an incomplete record. The reviewing court cannot add matter to the record before it, which was not part of the trial court proceedings, and decide the appeal on the basis of new material. The decision of the appellate court was based on an incomplete record in violation of the petitioner's 5th 6th 14th amendment rights under the U.S[.] Constitution. The trial and appellate court failed to specifically address each allegation of misconduct and/or failed to provide a detailed analysis in rejecting the claims of constitutional error. If any difference arises in the record as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted and settled by the court and the record made to conform, to the truth. When new evidence surfaces and the state fails to address by way of issuing violative discretion and the denial of evidentiary hearing upon request.

A court of appeals violates a petitioner's appellate review and its obligations when it fails to conduct the proper review in determining whether the trial court made all required findings and whether the record contains an evidentiary basis sufficient to support each required finding. The appellate court must analyze the claims and give a reasoned explanation of its findings and conclusions in order to facilitate meaningful review. The trial and appellate court[] failed to provide a reasoned explanation of its findings and thereby deprived petitioner of a full, fair and meaningful review and thereby denied him his 5th 14th amendment rights to due process.

. . .

**Ground Twenty-Four:**
The trial court and appellate court denied petitioner his 5th and 14th amendment due process protection under the U.S[.] Constitution where they intentionally failed to address each issue properly raised which resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the court proceeding.

**Supporting Facts:**
The trial court and Ohio court did not specifically address each allegation of misconduct or provide a detailed analysis in rejecting the claim of constitutional error. The appellate court did not engage in a sound reasoning process denying petitioner his 5th 14th amendment U.S[.] Constitutional rights to a fair and meaningful appellate review. The state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement[.]" A court of appeals violates a petitioner's right to meaningful appellate review and its obligations when it fails to conduct the proper review in determining whether the trial court made all required findings and whether the record contains an evidentiary basis sufficient to support each required finding. The appellate court must analyze the claims and give a reasoned explanation of its findings and conclusions in order to facilitate meaningful review. The trial and appellate court[] failed to provide a reasoned explanation of its findings and thereby deprived the petitioner of a full, fair and meaningful review and thereby denied him his 5th 14th amendment right to due process.

. . .

**Ground Twenty-Five:**
The court of appeals improperly applied the doctrine of res judicata to the petitioner['s] post-conviction petition as the trial court reviewed the claims on the merits, and the arguments made in the petition were not available on direct appeal which resulted in a decision that was contrary to or involved an unreasonable application of, clearly established federal law in violation of petitioners 5th 14th amendment right to due process under the U.S[.] Constitution as determined by the

26

Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding..

**Supporting Facts:**
The trial court must issue findings of fact and conclusions of law specifying the portions of the files and records which establish the bar of res judicata. The trial court did not provide findings of facts and conclusions of law identifying any portions of the record to apply res judicata. Therefore, the courts misapplied the application of res judicata as the tr[ia]l court had reviewed the claims on the merits and the arguments made in the petition was not available at the time of the appeal which resulted in a decision that was contrary [to] established federal law as determined by the Supreme Court of the United States. Therefore, the appellate court denied the petitioner his 5th 14th amendment rights to due process and a fair appellate review when it misapplied the application of res judicata.

. . .

**Ground Twenty-Six:**
The court of appeals . . . denied the petitioner his fifth and fourteenth amendment due process right to a fair and meaningful appellate review where it improperly applied the doctrine of res judicata to preclude petitioner from arguing (1) th[at] he was denied a fair trial due to prosecutorial misconduct where the prosecutor suppressed or withheld evidence; (2) denied the effective assistance of trial counsel where counsel failed to move to suppress the traffic stop based on a [T]erry stop violation for lack of probable cause.

**Supporting Facts:**
The suppression of evidence by the prosecutor of favorable evidence to an accused violates due process. The prosecutor withheld evidence of the alleged dismissal of the traffic charges and Mr. Feagin was not given a suppression hearing to challenge the [T]erry stop. Mr. Feagin was never brought to court and giv[en] the opportunity to defend against the alleged traffic violations. Trial counsel was ineffective for his failure to move to suppress the evidence based on the lack of probable cause established by the prosecutor. Mr. Feagin asserts that he informed counsel that he was not given the opportunity to defend the traffic charges and the record clearly shows that the traffic charges were not adjudicated, therefore denying him of his 5th 14th amendment rights to defend and due process under the U.S[.] Constitution. There is no journal entry in relation to the traffic charges on record. The court speaks through its journal.

. . .

27

**Ground Twenty-Seven:**
The trial court erred and denied petitioner his 5th 14th amendment due process right under the U.S[.] Constitution to a fair and meaningful review when it intentionally misconstrued petitioner['s] claims and argument.

**Supporting Facts:**
Mr. Feagin raised the claim that counsel was ineffective for failure to move to suppress the evidence based on [the] lack of probable cause for the traffic stop and/or unlawful arrest of Mr. Feagin. The trial and petitioner court failed to address the argument as it was presented and did not engage in a sound reasoning process, therefore abusing its discretion to the denial of Mr. Feagin's 5th 14th amendment due process right under the U.S[.] Constitution to a fair and adequate review. The state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement[.]" A court of appeals violates a petitioner's right to meaningful appellate review and its obligations when it fails to conduct the proper review in determining whether the trial court made all required findings and whether the record contains an evidentiary basis sufficient to support each required finding. The appellate court must analyze the claims and give a reasoned explanation of its findings and conclusions in order to facilitate meaningful review. The trial and appellate court[] failed to provide a reasoned explanation of its findings and thereby deprived the petitioner of a full, fair and meaningful review and thereby denied him his right to due process.

. . .

**Ground Twenty-Eight:**
Petitioner was denied his fifth and fourteenth amendment rights to due process protection rights under the U.S[.] Constitution to a fair trial due to prosecutorial misconduct where the prosecutor unlawfully dismissed the traffic charges.

**Supporting Facts:**
A court speaks through its journal entries. [T]here is no record that the trial court nor did the prosecutor follow clearly established rules and statu[t]es of state and federal law. Mr. Feagin was never giv[en] an opportunity to defend against the alleged traffic allegations and denied a suppression hearing. There is no record of the dismissal of these charges and Mr. Feagin was denied his 5th 14th amendment right to due process and the opportunity to defend against these charges and allegations. Probable cause was never established by any court in relation to the traffic charges. There is no record that the prosecutor nor the trial court followed the clearly established rules and statutes of federal law. The state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement[.]" A court of appeals violates a petitioner's right to meaningful appellate review and its obligations when it fails to conduct the proper review in determining whether the trial court made all required findings and whether the

28

record contains an evidentiary basis sufficient to support each required finding. The appellate court must analyze the claims and give a reasoned explanation of its findings and conclusions in order to facilitate meaningful review. The trial and appellate court[] failed to provide a reasoned explanation of its findings and thereby deprived the petitioner of a full, fair and meaningful review and thereby denied him his right to due process.

. . .

**<u>Ground Twenty-Nine:</u>**
Petitioner was denied his 5th 14th amendment due process rights under the U.S[.] Constitution to a fair trial due to prosecutorial misconduct where she failed to provide discovery of the records from the traffic citation or the motion to dismiss the traffic charges.

**<u>Supporting Facts:</u>**
Mr. Feagin was never brought to any court proceedings beyond arraignment to adjudicate the traffic charges. Mr. Feagin was denied his 5th 14th amendment rights to due process and denied the opportunity to defend against the traffic charges. There is no journal entry or any record of the dismissal of the traffic charges. The court and the prosecutor are in clear violation of clearly established federal law in violation of his due process rights to defend against any and all charges against him.

. . .

**<u>Ground Thirty:</u>**
The municipal judge lacked the subject matter jurisdiction to transfer the municipal traffic case to the common pleas court in violation of petitioner[']s] 5th 6th 14th amendment rights to due process and equal protection of the law under the U.S[.] Constitution.

**<u>Supporting Facts:</u>**
Mr[.] Feagin was denied his 5th 14th amendment rights to due process under the U.S[.] Constitution and never given an opportunity to defend against the traffic charges and there is no record or journal entries on record of these charges being adjudicated. The docket on this case is void of any journal entries or judgment entries in relation to the adjudication of these charges. Mr[.] Feagin was denied his 5th and 14th amendment rights to due process when h[e] was denied a hearing to defend against the traffic charges.

. . .

**<u>Ground Thirty-One:</u>**
The trial court erred in violation of his 5th and 14th amendments rights to due process as a matter of law in its findings of fact that the prosecutor chose not to prosecute

the traffic charges, where there is no record, and/or journal entry of the dismissal of those charges.

**<u>Supporting Facts</u>:**
The record does not include any separate journal entry disposing of the traffic charges. It is axiomatic that a court speaks though its journal. There is no journal entry from the trial court who lacks jurisdiction to hear the misdemeanor traffic charges. Mr. Feagin was denied the opportunity to defend against the traffic charges in violation of his 5th 6th 14th amendment rights to due process under the U.S[.] Constitution and there is no journal entries or judgment entries of any kind on the docket in relation to the disposal of these charges. A reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.

. . .

**<u>Ground Thirty-Two</u>:**
The trial court denied the petitioner 5th and 14th amendment rights to due process and a fair and adequate hearing where it determined that the officer had probable cause to conduct an initial traffic stop without providing the petitioner with a suppression hearing to challenge the Terry stop.

**<u>Supporting Facts</u>:**
A Terry stop is constitutionally valid provided the state demonstrate[s] at a suppression hearing that the facts justified a reasonable suspicion of criminal activity. Mr. Feagin was never given a suppression hearing to determine probable cause. Mr. Feagin was denied his 5th 6th 14th amendment rights under the U.S[.] Constitution to due process when he was denied the opportunity to defend against the traffic charges and there are no record of journal entries, judgment entries in the docket indicating that these charges were disposed of in any court of competent jurisdiction. Mr. Feagin was deprived of his constitutional rights to defend and the court deprived him of a suppression hearing in order to challenge the Terry stop.

. . .

**<u>Ground Thirty-Three</u>:**
The trial court erred as a matter of law in its findings that the prosecutor chose in its discretion not to charge those misdemeanor offenses with the felony where those findings are not supported by the record in violation of his 5th 14th amendment right to due process under the U.S[.] Constitution.

**<u>Supporting Facts</u>:**
There is no record no judgment or any record to support the trial court[']s findings of fact. . . involving the alleged traffic violations. Mr. Feagin was denied the opportunity to defend against any allegations set forth by the state. There is no

journal entries or judgment entries to support the decision by the trial or appellate court.

. . .

(ECF Doc. 1, pp. 14-68).

Feagin concludes each statement of supporting facts as follows:

The decision of the Fifth Appellate district court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceeding. [O]r is not supported by the state court record, and any presumption of corrections is clearly rebutted clear and convincing evidence, and the petitioner has remained diligent in developing the facts of the record.

(*See e.g., id.* at p. 7).

## I.      Standard of Review

AEDPA applies to Feagin's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the

applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a),

(b), (c). Further, if an application for writ of habeas corpus involves a claim that was

"adjudicated on the merits in State court proceedings," the application

> shall not be granted . . . unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100

(2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the

petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the

holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S.

362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state

court arrives at a conclusion opposite that reached by the Court on a question of law or if the

state court decides a case differently than the Court despite both cases having materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431

F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does

not act contrary to clearly established federal law where U.S. Supreme Court precedent is

ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per

curiam).

A state court decision is an unreasonable application of Supreme Court precedent where

the state court's adjudication was "objectively unreasonable" and not merely erroneous or

incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th

32

Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432

(6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## VI.        Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A.        Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

34

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1) reliance upon federal cases employing constitutional analysis;

(2) reliance upon state cases employing federal constitutional analysis;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### B.      Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and

35

is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013)

(quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally

defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply

with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is

an adequate and independent state ground for denying review of a federal constitutional claim;

and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v.*

*Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created

safety-valves to permit review in limited circumstances. A petitioner can obtain review of

procedurally defaulted claims if he or she shows: (1) "cause," *i.e.* that some external factor kept

him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.*

that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability

that a different verdict would have resulted if the alleged constitutional violation had not

occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d

307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if

the procedurally defaulted claim is based on new evidence that the petitioner was factually

innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of

justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir.

2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted

claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]"

means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614,

623 (1998). To overcome procedural default, an actual innocence claim must be supported by

36

"new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## II. Discussion

Respondent argues in the Return of Writ that Feagin's Petition was untimely filed. (ECF Doc. 11, pp. 30-37). Feagin contends that Respondent's allegation that his petition is untimely is unfounded. (ECF Doc. 15, p. 4). He argues that the time to file his petition was tolled until November 23, 2024, one year after "the deadline for appeal to the [Ohio] Supreme Court" regarding his petition for post-conviction relief. (*Id.*). Thus, before turning to Feagin's grounds for relief, I must first determine whether Feagin's petition was timely filed. For the reasons set forth below, I find that Feagin filed his Petition within AEDPA's one-year statute of limitations.

### A. Feagin's Petition is Timely Under § 2244(d)(1)(A)

AEDPA provides that a: "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute of limitations period runs from the latest of four possible dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The United States Supreme Court has held that "direct review" for purposes of § 2241(d)(1)(A) includes seeking certiorari. *Penry v. Lynaugh*, 492 U.S. 302, 314

37

(1989). Therefore, the statute of limitations includes the 90 days that the petitioner has to seek certiorari whether or not such review is sought. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012) (citing *Gonzalez v. Thaler*, 56 U.S. 134(2012)).

Under section § 2244(d)(1)(A), Feagin had one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" to file his petition. Here, Feagin's conviction and sentence were affirmed by Ohio's Fifth District Court of Appeals on October 12, 2022. (ECF Doc. 11-1, pp. 97-114; *Feagin I*, 2022 WL 6949422). He then had 45 days to file an appeal to the Ohio Supreme Court. *See* S.Ct.Prac.R. 6.01(A)(1). Feagin filed his timely appeal to the Ohio Supreme Court on November 21, 2021. (ECF Doc. 11-1, pp. 125-41). The Ohio Supreme Court declined to accept jurisdiction on January 31, 2023. (*Id.* at p. 181; *Feagin II* 201 N.E.3d 917). The record before the Court does not indicate that Feagin sought certiorari with the United States Supreme Court, but including the 90 days he had to seek such review after the Ohio Supreme Court declined jurisdiction, Feagin's conviction became final on May 3, 2023.  Therefore, pursuant to § 2244(d)(1)(A), Feagin had until May 4, 2024 to file his federal habeas petition.

Feagin's petition was filed with this Court on November 18, 2024. (ECF Doc 1). Thus, absent statutory or equitable tolling, Feagin's petition is time barred.

### B.      Feagin's Petition is Timely After Statutory Tolling

AEDPA allows for statutory tolling under § 2244(d)(2) when it states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016). Statutory tolling extends "until the application has achieved final

38

resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), or "until the expiration of the period for further State court review, whether or not the petitioner actually seeks such review." *Holbrook*, 833 F.3d at 615, quoting *Whitcomb v. Smith*, 23 F. App'x 271, 273 (6th Cir. 2001). However, even where a petitioner has properly filed a state postconviction motion and tolls AEDPA's statute of limitations, statutory tolling under 28 U.S.C. § 2244(d)(2) does not serve to revive the one-year limitations period. *Vroman v. Brigano*, 346 F.3d 589, 601 (6th Cir. 2003). Rather, statutory tolling only pauses a clock that has not yet expired. *Id.* And the statute of limitations is not tolled during the filing of a subsequent petition for certiorari to the United States Supreme Court because that period is within the federal system and is "not a part of a 'State's post-conviction procedures.'" *Lawrence v. Florida*, 549 U.S. 327, 337 (2007) quoting 28 U.S.C. § 2244(d)(2).

Here, the statute of limitations tolled until November 24, 2023 when Feagin's post-conviction relief petition achieved final resolution.

Feagin filed his petition for post-conviction relief with the state trial court on December 1, 2022. (ECF Doc.11-1, pp.182-99). The state trial court denied the petition on January 13, 2023, and Feagin appealed that decision to the state appellate court on February 10, 2023. (*Id.* at p. 219). Each of these dates have no effect on AEDPA's statute of limitations because Feagin's conviction did not become final until May 3, 2023.

The state appellate court issued its decision, affirming the denial of Feagin's post-conviction relief petition on August 14, 2023. (*Id.* at pp. 241-49). Feagin filed a timely motion for reconsideration with the state appeals court on August 24, 2023. (*Id.* at pp. 251-53). Feagin's motion for reconsideration was denied on October 10, 2023. (*Id.* at pp. 254-55). Feagin then had 45 days to file an appeal with the Ohio Supreme Court. *See* S.Ct.Prac.R. 6.01(A)(1). However,

39

while Feagin did not appeal the appellate court's decision, the statute of limitations tolls for the 45 days he had to file such an appeal. *See Holbrook*, 833 F.3d at 615. Therefore, pursuant to § 2244(d)(2), the statute of limitations "paused" from May 3, 2023, the date the conviction became final, until November 24, 2023. Therefore, accounting for AEDPA's one-year statute of limitations, Feagin had until November 25, 2024[3] to file his Petition, and because he filed on November 18, 2024, his petition was timely.

### C. Grounds for Relief

#### 1. Speedy Trial

In his first ground for relief, Feagin argues that his Fifth, Sixth, and Fourteenth Amendment rights were violated when he was not brought to trial within the statutory time frame in violation of his right to a speedy trial. (ECF Doc. 1, p. 14; ECF Doc. 25, pp. 105-45). Feagin contends that he raised this issue in his direct appeal. (*Id.* at p. 16). Respondent argues that "to the extent that these claims are premised on an alleged violation of Ohio's speedy trial statute, Feagin fails to raise a cognizable claim for federal habeas relief." (ECF Doc. 11, p. 58). Respondent also contends that Feagin raised this issue on direct appeal. (*Id.*). Upon review, I find that Feagin procedurally defaulted the speedy trial issue.

In his appellate brief, Feagin's first assignment of error was: "whether the trial court erred by failing to dismiss the case for not affording the defendant a trial within the statutory time limit, pursuant to ORC 2945.71." (ECF Doc. 11-1, p. 56) (cleaned up). The assignment of error, on its face, only raises the issue on state law grounds, not in relation to the federal constitutional

---

[3] To be precise, 365 days after November 24, 2023, was November 23, 2024, which fell on a Saturday. Therefore, Feagin had until the following Monday, November 25, 2025 to file his Petition.

guarantee to a speedy trial. A review of the substantive argument reveals the same. (*See id.* at p. 59). In this assignment of error, Feagin argues as follows:

> The Defendant/Appellant was arrested on the 7th day of July, 2020. The Defendant did not have his jury trial until the 28th day of September, 2021, a total of 447 days. The Defendant/Appellant was incarcerated the entire time. The Ohio Revised Code §2945.71 requires the Defendant/Appellant to be brought to trial within 270 days, which is reduced to 90 days in the event the defendant is incarcerated on the pending charge. The Defendant's right to a speedy trial was violated when the defendant was not brought to trial for 447 days.

(*Id.*).

Feagin's argument on appeal in state court does not provide the same basis for relief as that he requested in his petition before this Court. While Feagin invokes federal constitutional law in his habeas petition, a review of his appellate brief reveals that the issue regarding the time it took to bring him to trial was only raised under state law grounds. *See Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

Accordingly, Feagin has not fairly presented a federal constitutional speedy trial issue to the state courts, and the time to do so has passed. The issue raised on direct appeal is an issue of state law, and therefore, to the extent it is raised in habeas review, it is not cognizable.

In his Traverse, Feagin argues cause and prejudice due to the ineffective assistance of appellate counsel. (*See* ECF Doc. 25, pp. 37-50). Feagin argues that his appellate "counsel was responsible for the alleged default . . . ." (*Id.* at p. 42). While ineffective assistance of counsel may be argued as cause in federal habeas review for a procedurally defaulted claim, that is only true when the ineffective assistance of counsel issue itself is not procedurally defaulted. See *Edwards v. Carpenter*, 529 U.S. 446, 453 (U.S. 2000). As will be discussed in more detail below,

Feagin procedurally defaulted his claim for ineffective assistance of appellate counsel. Thus it cannot serve to excuse default for this ground.

I find that Feagin has procedurally defaulted his first ground for relief, and that cause and prejudice do not exist to excuse the default; accordingly, I recommend that it be dismissed.

### 2. Evidentiary Rulings

In Grounds for Relief Two and Three, Feagin seeks relief based on the state court's evidentiary rulings. (ECF Doc. 1, pp. 16-20). Feagin asserts that the state court's evidentiary decisions violated his Fifth, Sixth, and Fourteenth Amendment rights. (*Id.*). Feagin raised these issues on direct appeal as assignments of error two and three. (ECF Doc. 11-1, pp. 59-60). In response, the Warden argues that issues related to evidentiary rulings are not cognizable in federal habeas corpus review. (ECF Doc. 11, pp. 38-41).

"In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review," but habeas relief may be granted if "the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due process violation." *Wood v. Morrison*, 2021 WL 1327841, at *3 (6th Cir. Jan. 11, 2021); *see also Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012). Upon review of Feagin's claims, I find that he has failed to show that any error by the state trial court in applying Ohio evidentiary law was egregious enough to amount to a denial of a constitutional right. (*Id.*). He has not identified how these interpretations rise to the level of fundamental miscarriages of justice or demonstrated any violations of a due process right. Rather, he simply asserts that the trial court made improper exclusion rulings and that the Mansfield police department broke their own internal protocols to elicit evidence that was used at trial. (*See* ECF Doc. 1, p. 16 ("the trial court erred by excluding the police body camera . . . "); ECF Doc. 25, p. 24 ("the chain of custody is clearly broken in relation to the drug evidence

collected by Officer Moore and introduced at trial in this case.")). Feagin's arguments center around state law, and in his habeas materials, he attempts to re-litigate the issues already decided by the state trial and appellate courts. He does not raise cogent arguments as to how the rulings by the state courts implicated the Constitution or laws or treaties of the United States rather than a blanket assertion that they violate his Fifth, Sixth, and Fourteenth Amendment rights – an assertion he makes in virtually all of his 33 grounds for relief.

Feagin's evidentiary challenges do not entitle him to habeas relief, and I recommend the District Court deny Grounds Two and Three as not cognizable.

### 3.  Ineffective Assistance of Trial Counsel

In Ground Five, Feagin argues that he received ineffective assistance of trial counsel when counsel failed to call the owner of the vehicle as a witness at trial. (ECF Doc. 1, pp. 22-23). Respondent contends that this ground should be denied because "[t]he Fifth District Court of Appeals applied controlling United States Supreme Court precedent" when adjudicating this issue on appeal. (ECF Doc. 11, p. 67).

It is undisputed that Feagin fairly presented his claim for ineffective assistance of counsel in his state court proceedings by raising it on direct appeal (ECF Doc. 11-1, p. 57) and before the Ohio Supreme Court (*Id.* at pp. 125-41). Therefore, Feagin is only entitled to habeas relief if he can establish that adjudication of his claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d)(1)-(2).

The clearly established federal law applicable here is the Sixth Amendment's guarantee of the right to effective counsel as announced in *Strickland v. Washington*, 466 U.S. 668, (1984).

The Sixth Amendment provides in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Supreme Court set forth two requirements that must be shown to establish that an attorney was constitutionally ineffective in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, a petitioner must demonstrate "that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Thus, to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In light of "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (internal citation omitted).

Second, a petitioner must demonstrate "that the deficient performance prejudiced the defense." *Id.* at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "The defendant must show that

44

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* at 694.

When the state appellate court analyzes an ineffective assistance of counsel claim on the

merits, a federal habeas court applies AEDPA deference to the state court's adjudication

pursuant to § 2254(d). *Perkins v. McKee*, 411 F. App'x. 822, 828 (6th Cir. 2011). The U.S.

Supreme Court explained the added layer of deference as follows:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 103-05 (2011).

Here, Ohio's Fifth District Court of Appeals considered the issue as follows:

> {¶ 76} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687– 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

> {¶ 77} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 8th Dist.

Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18. Decisions about which witnesses to call involve matters committed to counsel's professional judgment. *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 127 "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001).

. . .

{¶ 79} Appellant's second argument faults counsel for failing to subpoena or interview the owner of the Lincoln SUV.

{¶ 80} First, appellant provides no reference to the record to support a conclusion that counsel never interviewed the owner of the Lincoln. The claim appears, therefore, to be speculation and we reject the same.

{¶ 81} Second, Appellant argues that the vehicle owner's testimony would have been helpful in determining the owner of the bookbag containing the drugs. Even if arguendo we were to find counsel should have subpoenaed the owner of the Lincoln, appellant still could not show the outcome of the trial would have been any different. While appellant theorizes the owner's testimony would have resolved conflicting testimony regarding how the vehicle came into his possession, appellant was not charged with any type of theft regarding the vehicle. In regard to the offenses he was charged with, appellant was driving the vehicle, not the owner. Amanda Craft, appellant's companion, testified appellant picked her up earlier that day driving the Lincoln. T. 357. Appellant also argues the testimony of the owner would have been beneficial in determining the owner of the bookbag. However, appellant's hospital discharge records were in the bookbag with the drugs, tying him to the drugs. T. 242-257, 380.

{¶ 82} Appellant has not demonstrated ineffective assistance of counsel. His fourth and fifth assignments of error are overruled.

*Feagin I*, 2022 WL 6949422, at *8.

A review of the state appellate court's decision reveals that it appropriately applied the standard defined by the United States Supreme Court in *Strickland*. In doing so, the court determined that counsel's performance was not deficient, Feagin had not demonstrated prejudice, and thus Feagin's Sixth Amendment rights were not violated. Likewise, applying the double-deference required of a federal court sitting in habeas review, I find that Ohio's Fifth District Court of Appeals' denial of his ineffective assistance of counsel claim was not contrary to and did not involve an unreasonable application of federal law.

46

I next turn to whether or not the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented and find that it did not.

On this point, Feagin's argument centers around his alleged inability to impeach the testimony of his codefendant. (ECF Doc. 1, p. 22 ("trial counsel was ineffective for his failure [to] call the owner of the vehicle as a witness which would have allowed impeachment evidence to be introduced oof the co-defendant and establish motive to why her story had changed . . . ."; ECF Doc. 25, pp. 155-56 (reiterating the same). This point is not well taken.

The Supreme Court has observed that in the habeas context, "[t]he term 'unreasonable' is no doubt difficult to define." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (quoting *Williams v. Taylor,* 529 U.S. 362 (2000)). "It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* This court must defer to the state court's determination of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986). The state court's determination of a factual issue is presumed correct, and habeas petitioners bear the burden to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2554(e)(1).

Here, while the state appellate court acknowledged that Feagin's co-defendant testified that Feagin picked her up in the vehicle, the Court listed various other reasons why it found the lack of the vehicle owner's testimony was not prejudicial to Feagin. Feagin has not rebutted the presumption of correctness by clear and convincing evidence. Rather, he simply attempts to re-litigate the issue upon habeas review. Accordingly, I find that the state court decision denying Feagin's ineffective assistance of counsel claim was consistent with clearly established Federal

47

law and was based upon a reasonable determination of the facts in light of the evidence produced, I therefore recommend that the District Court deny Ground Five.

### 4.    Ineffective Assistance of Appellate Counsel

In Grounds Four, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, Twenty-One, and Twenty-Two, Feagin asserts claims of ineffective assistance of appellate counsel. (ECF Doc. 1, pp. 20-44). Respondent argues that each of these grounds are procedurally defaulted because Feagin's Ohio Appellate Rule 26(B) application was denied as untimely. (ECF Doc. 11, pp. 51-53). I agree and find that Feagin procedurally defaulted each of these 18 grounds under *Maupin*.

Feagin filed his Application to Reopen his direct appeal, alleging ineffective assistance of appellate counsel, on January 19, 2023, 100 days after the Fifth District Court of Appeals journalized his direct appeal on October 12, 2022. (*See* ECF Doc. 11-1, pp. 97-114, 256-89). Ohio Rule of Appellate Procedure 26(B)(1) states, in pertinent part: "An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." The Fifth District Court of Appeals did not find good cause for Feagin's delay in filing and accordingly denied the application to reopen on January 31, 2023. (*Id.* at pp. 290-91).

Therefore, Feagin did not comply with a state procedural rule, Ohio Rule of Appellate Procedure 26(B), because he did not file within the statutory timeframe of 90 days. Ohio's Fifth District Court of Appeals enforced the procedural rule by denying his motion as untimely. Dismissal of an application to reopen pursuant to Ohio Appellate Rule 26(B) on timeliness grounds is an adequate and independent state procedural bar preventing habeas review. *See, e.g.*, *Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010) ("Because the timeliness requirements of

48

Rule 26(B) were firmly established and regularly followed by September 1998, they are an adequate and independent state procedural bar."). Under the final *Maupin* prong, – cause and prejudice – Feagin argues that his Appellate Rule 26(B) application should have been considered timely filed. (ECF Doc. 25, pp. 50-53).

According to Feagin, he "clearly labeled his 26(b) application to Re-Open and complied with the rule timely submitting it to the court" however, "[t]he clerk refused to file the application because of a clerical error in the case number, which read CV instead of CA." *(Id.* at p. 52). Feagin asserts that the "distinction was insignificant" and the "mistake was inadvertent, correctable and made in good faith . . . ." (*Id.*)*.* While Feagin makes this argument in relation to cause and prejudice to excuse his procedural default, his argument bolsters that there was not some external factor kept him from complying with the state rule.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Rather, as Feagin acknowledges, it was his own mistake in filing that prevented it from being timely filed. (ECF Doc. 25, p. 52).

The Fifth District Court of Appeals acknowledged Feagin's original attempt to file with the improper case number in its decision. (*See* ECF Doc. 11-1, pp. 290-91). While Feagin may argue that his mistake was small or perceived it as insignificant, I find that it is another layer of procedural default because, regardless of the perceived significance, the state had a rule regarding how the application needed to be filed, including that it have the proper case number, and Feagin did not comply with that rule. This cannot suffice to excuse Feagin's procedural default. Therefore, all four *Maupin* prongs are established, and this ground is procedurally defaulted.

49

Accordingly, I find that Grounds Four, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, Twenty-One, and Twenty-Two are procedurally defaulted.

### 5. Post-Conviction Relief

In Grounds Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, and Twenty-Seven, Feagin challenges the state appellate court's decision regarding his post-conviction relief petition. His claims range from the appellate court having an incomplete records because the trial court did not provide a factual basis for its denial and continued the error when it itself did not address that issue (Grounds Twenty-Three and Twenty-Four), improperly applying the doctrine of res judicata (Grounds Twenty-Five and Twenty-Six), and that the appellate court intentionally misconstrued his arguments on appeal of his post-conviction petition's denial (Ground Twenty-Seven). (ECF Doc. 1, pp. 44-56). Respondent argues that each of these grounds are non-cognizable in federal habeas corpus review. (ECF Doc. 11, p. 42).

The scope of the federal writ of habeas corpus does not reach second-tier complaints about deficiencies in state post-conviction proceedings. *Davis v. Burt*, 100 F. App'x 340, 351 (6th Cir. 2004). In *Cress v. Palmer,* 484 F.3d 844 (6th Cir. 2007), the Sixth Circuit analyzed a petitioner's challenge to the validity of the state court's conduct during his post-conviction litigation and held:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton,* 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker,* 316 F.3d 557, 571 (6th Cir. 2002). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Kirby,* 794 F.2d at 246 (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973)) . . . . A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor,

50

would not "result [in] ... release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention. *Kirby,* 794 F.2d at 247. "Though the *ultimate* goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement. *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell,* 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings cannot provide a basis for federal habeas relief" (citing *Kirby,* 794 F.2d at 247)); *Greer v. Mitchell,* 624 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief.").

*Id.* at 853 (emphasis and alterations in original).

Accordingly, because post-conviction proceedings are issues of state law and outside the scope of review under Section 2254, I agree with Respondent and find that Grounds Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, and Twenty-Seven are not cognizable and recommend that they be denied.

### 6. Prosecutorial Misconduct and Traffic Charges

Grounds Twenty-Eight, Twenty-Nine, Thirty-One, and Thirty-Three each relate to the dismissal of traffic charges, and Feagin's assertion that the act of dismissing the charges constituted prosecutorial misconduct. (ECF Doc. 1, pp. 56-61; 63-65; 68-71). Ground Thirty relates to the municipal court's alleged lack of jurisdiction to hear the traffic charges. (*Id.* at pp. 61-63).

These issues are not properly before the Court. Under 28 U.S.C. § 2254, a state prisoner may seek federal habeas corpus relief "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Feagin is in state court custody for charges of drug possession and trafficking as well as various weapons charges. (*See* ECF Doc. 11-1, pp. 48-49; *Feagin I*, 2022 WL 6949422). Therefore, because Feagin is not

being held in state custody for these traffic violations, the issuance of a writ of habeas corpus would have no effect on his custody. I therefore recommend that Grounds Twenty-Eight, Twenty-Nine, Thirty, Thirty-One, and Thirty-Three be dismissed.

### 7. Fourth Amendment *Terry* Stop

In Ground Thirty-Two, Feagin argues that his constitutional rights were violated when he was not given a suppression hearing to challenge the validity of the *Terry* stop conducted by police officers. (ECF Doc. 1, pp. 66-68).

In this ground for relief, Feagin again mentions the traffic charges that were ultimately dismissed. (*See id.*). To the extent that Feagin is asserting error with the dismissal of traffic charges I recommend dismissal of this ground for relief for the same reasons identified in the previous section.

However, Feagin also argues his rights were violated when he was not given a suppression hearing to challenge the validity of the traffic stop that led to the other charges at issue in this case. (*Id.*). To that end, it could be interpreted that this issue relates to the state custody that forms the basis for his present habeas petition. Nonetheless, I still recommend dismissal of this ground as procedurally defaulted. Feagin did not raise the issue of a suppression hearing, or the validity of the traffic stop on direct appeal, and the time to raise that issue has passed.

Feagin again argues ineffective assistance of trial counsel as cause and prejudice for this issue. (*See* ECF Doc. 25, pp. 58-61 "Feagin asserts that trial counsel never filed a motion to suppress and no probable cause was ever established on the record."). Feagin did not raise an issue on appeal that his trial counsel was ineffective for failing to file a motion to suppress. Furthermore, as has been discussed throughout this Report and Recommendation, even if Feagin

52

raised this issue in his Rule 26(B) application, this issue itself is procedurally defaulted and thus cannot serve to excuse his default. I therefore recommend Ground Thirty-Two be dismissed.

### D.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a Section 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

As discussed above, 20 of Feagin's grounds for relief are procedurally defaulted and Feagin has not excused those defaults. Five of the grounds raise issues that do not affect his state court custody. Additionally, seven of Feagin's grounds for relief are not cognizable in federal habeas review. As to Ground Five, Feagin failed to argue let alone establish, how the state court improperly applied the United States Supreme Court's *Strickland* test. Thus, if the District Court accepts my recommendations, Feagin will not be able to show that my conclusions in this Report and Recommendation are debatable. Therefore, I recommend that no COA issue in this case.

### E.     Recommendation

For the foregoing reasons, I recommend dismissing Grounds for Relief One, Four, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, Twenty-One, Twenty-Two, and Thirty-Two as procedurally defaulted. I recommend that Grounds Twenty-Eight, Twenty-Nine, Thirty, Thirty-One, and

Thirty-Three be dismissed because they do not affect his state court custody. I recommend that

Grounds Two, Three, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, and Twenty-Seven

be denied as not cognizable. I also recommend that Ground Five be denied because it was

decided by the state court consistently with clearly established Federal law and was based on a

reasonable determination of the facts. I further recommend that Feagin be denied a certificate of

appealability.

Dated: April 27, 2026

Reuben J. Sheperd
United States Magistrate Judge

---

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate

judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

55